## ASSESSMENTS FOR SEWERS.

[Common Pleas Court of Licking County.]

CHARLES H. KIBLER v. CITY OF NEWARK ET AL.

Decided, January, 1907.

*Sewers—Assessment for—Local Drainage—Expense of Construction Assessed, How—Benefits—Notice—Average Depth of Lots—Repeal of Statute before Assessing Ordinance was Passed—Injunction.*

1. Where the amount of a sewer assessment does not exceed the special benefits to the land, the assessment is not rendered invalid because levied in terms by the abutting foot.
2. An assessment for a sewer will be regarded as having been made with reference to benefits, as required by Section 53 of the municipal code, when the proceedings with reference thereto are all regular, and the property owner enters no complaint until he seeks to enjoin collection of the assessment and there is no showing of fraud, or evidence that the assessment as laid unquestionably exceeds the special benefits to the property.
3. A property owner who is provided with a drain leading to a cesspool on his own property is not, on the ground that he is already provided with local drainage, exempt from assessment for a sewer laid in the street, having a proper outlet, and built in conformity with the requirements of the statute.
4. An abutting property owner is not entitled to written notice of the passage of an ordinance providing for the construction of a sewer.
5. The repeal of a statute relating to sewer improvements after proceedings for the construction of a sewer have been begun, but before the passage of the assessing ordinance, does not render the assessment invalid.

SEWARD, J. (orally).

This case is submitted to the court upon the pleadings and the evidence. The petition alleges that the plaintiff was the owner of certain real estate in the city of Newark, fronting 415 feet on North Fourth street, and about 600 feet on Charles street; its south line is about 500 feet long, on which is a large dwelling-house, a stable and two small out-buildings. After the water works was installed, and more than twenty years ago, he constructed a sanitary sewer, at his own expense, which is still in use, and adequate and without offense to the sense of smell or detrimental to health.

At the time of its construction, the defendant alleges, there was no system of sewers established and no sewers in the city and none within a half a mile of the property, and that he was compelled to discharge its contents into a cesspool; that the city, without actual notice, and without any notice, so far as he can recall, until some time after its adoption, adopted a resolution to improve North Fourth street, north of Log Pond Run by the construction of a sanitary sewer, on August 1, 1903 (should be 1902); that the costs and expenses thereof should be assessed against the lots and lands abutting thereon; that on the first day of December, 1903 (should be 1902), they passed an ordinance to improve said street to Log Pond Run; thence east to an alley along said run to Elm street; that the costs and expenses of said improvement shall be assessed per foot front, according to benefits on the property; that on June 20, 1904, council passed the assessing ordinance, levying an assessment upon the 415 feet of $388.86, being .937 per foot front; that the amount should be paid within thirty days from the final passage of the ordinance or in ten semi-annual payments and should be certified to the auditor. And he prays for an injunction against the certification of the amount to the auditor. A preliminary injunction was allowed.

The issues are made up from the material facts alleged in this petition and by the answer filed by the city.

It is claimed by the plaintiff that the assessment is invalid:

1st, because, in making the same, the council disregarded the rule that the costs and expenses should be per foot front according to benefits, and arbitrarily multiplied the number of feet by 97.3; and 2d, because, in making the assessment, the council disregarded Section 53, which provides—"In all cases of assessments, the council shall limit the same to the special benefits conferred upon the property assessed"; 3d, because, in making the assessment, the council disregarded the section which provides that any lots or lands shall not be assessed that do not need local drainage or which are already provided therewith; 4th, that they disregarded their duty in assessing upon the whole of plaintiff's land to the depth on an average of 550 feet from North Fourth street; 5th, that no notice

of the resolution to improve was served upon him; and a question is made as to whether such notice is necessary.

Now, taking up these matters in the order which I have indicated—The first is: That the council disregarded the rule that the costs and expenses should be per foot front according to benefits, and arbitrarily multiplied the number of feet by 97.3.

The 68th Ohio State, 603, holds that an assessment, otherwise lawful, is not rendered invalid because assessed in terms by the abutting foot, where it appears that the amount of the assessment did not exceed the special benefits to the land.

The syllabus of the 65th Ohio State, 211, reads:

"Where, in a suit brought by a treasurer to collect a street assessment, it has been judicially determined that the assessment made by the city authorities has in a substantial amount exceeded the special benefits conferred upon the property by the street impovement, the trial court has jurisdiction to go forward, upon proper pleadings, and determine what amount should be assessed; and it is not error for the court to refuse to set aside the assessment *in toto* and remit the question to the city authorities for their action."

I read from the opinion of the court at page 214:

"The question to be determined was not whether *any* assessment might have been lawfully made. Confessedly one not exceeding benefits could have been lawfully made. Hence, the question was simply one as to amount. Issues of fact and of law looking to the determination of that question were properly joined by the pleadings; the parties were before a tribunal whose office is to hear and determine just such controversies, and capable of giving legal, and unless appeal is taken, conclusive effect to its judgment, and thus end the contention, and no substantial reason has been adduced, and we think none can be, why the parties should not work out their controversy by the aid of that tribunal. And this conclusion seems to be aided by the argument *ab inconvenienti.* It is conceded by counsel for plaintiffs in error that if a new assessment were made by the city authorities it would be subject to review by the courts, and if such municipal work may be reviewed upon the question of fact as to the amount of benefits, and the relation the same bear to the value of the land, it would seem that, where it has been judicially determined that the assessments made by the municipal authorities have exceeded the benefits conferred, and are, for that reason, illegal, economy

and the avoidance of a multiplicity of suits would demand that the matter of new assessments upon correct principles be worked out in the courts in the first instance rather than that the matter be remitted to the municipal authorities with the chance of further litigation in case the amount assessed should again be deemed by the owner to be excessive.''

This is a case where the circuit court set aside the assessment because of irregularities, and the circuit court is affirmed, the Supreme Court holding that the court has a right to determine the matter where there is irregularity; that it is within the jurisdiction of the circuit court to determine the matter.

2. Because, in making the assessment, the council disregarded Section 53.

These proceedings were commenced under the statute as it existed before the enactment of the municipal code, and the court finds that the laws as then in existence govern even to the passage of the assessing ordinance. The assessing statute was repealed before the assessing ordinance was passed, but the court holds that that is saved under Section 79 of the Revised Statutes, Section 2289 provides:

''If in any such action it shall appear that by reason of any technical irregularity or defect—whether in the proceedings of the board of improvements, or of the council, or of any other officer of the corporation, or in the plans or estimates—the assessment has not been properly made against any defendant, or upon any lot or parcel of land sought to be charged, the court may nevertheless on satisfactory proof that expense has been incurred which is a proper charge against such defendant, or lot or parcel of land in question, render judgment for the amount properly chargeable against such defendant, or on such lot of land, but in such cases the court shall make such order for the payment of the costs as may be deemed equitable and proper.''

I quote from the syllabus of 34 Ohio State, 551, at 552:

''9. Where the city council determines that the amount of the assessment does not exceed the value of the benefits specially conferred, its judgment in the premises, in the absence of fraud, is final and conclusive, unless modified by the council before the final confirmation, as provided in Section 588; but when the municipal authorities, in levying special assessments, do not undertake to determine the amount of the special benefits con-

ferred, either in respect to the amount assessed, or in the apportionment of the burden, the assessment may be enjoined; and in an action for that purpose parol evidence may be introduced to show that the authorities did not act on the proper basis.''

At page 571:

''A majority of the court think that where the city council determines that the amount of the assessment does not exceed the value of the benefits specially conferred, its judgment in the premises, in the absence of fraud, is final and conclusive, unless modified by the council before the final confirmation, as provided in Section 588; but when the municipal authorities, in levying special assessments, do not undertake to determine the amount of the special benefits conferred, either in respect to the amount assessed, or in the apportionment of the burden, the assessment may be enjoined, and in an action for that purpose parol evidence may be introduced to show that the authorities did not act on the proper basis.  If this proposition means that the council may determine that the amount of the assessment does not exceed the value of the benefits specially conferred, without an actual valuation of the special benefits, and without notice to those who are to be assessed, I can not concur in it.''

There is a dissenting opinion in that case.

The second paragraph of the syllabus in *Price* v. *Toledo*, 4 C. C.—N. S., page 571, reads:

''2.   Where an assessment according to benefits for a street improvement has been in all respects duly and regularly made and all the proceedings are complete, and no complaint is made by property owners until an action is commenced to enjoin the collection of such assessment on the ground that it exceeds the benefits, the court will not grant such relief, unless the action of the council or other municipal authorities has been fraudulent or tantamount to fraud, or the assessment is so excessive as to clearly and unquestionably exceed the special benefits to said property.''

And on page 63:

''We are of the opinion that we have no right as a court to interfere with an assessment and enjoin its collection on the ground that the benefits are not equal to the assessment, unless the assessment is fraudulent or there is such a disparity as to be clearly wrong and unjust and tantamount to fraud on

the part of the authorities. Where the assessment is so clearly and unquestionably excessive that there can be no material difference of opinion upon the question, we think that the court may grant relief. But where there is a mere conflict of evidence and where all the proceedings have been regular, where the notices have been given, where the proper officers have acted upon the matter and all legal steps taken and the party complains for the first time in a court of equity, in such case, we are of the opinion that the court ought not to interfere. To hold that the court should do so would be to require a re-examination and review by the courts in almost every assessment in this city and in every city in the state. There is hardly an assessment made for a street improvement, for a sewer or for any other public improvement, where there are not some who are of the opinion that they are assessed too heavily—that the assessment is too high. But we do not sit as a court of appeal from the action of the council or the board of equalization, to hear the case anew and review it upon the evidence and then according to our opinion determine what would be a fair assessment.''

Now, as to the council disregarding the section which provides that any lots or lands shall not be assessed that does not need local drainage, or which is already provided therewith.

The 45th Ohio State, 407, the first branch of the syllabus:

''The curative provisions of Section 2289 and Section 2327 of the Revised Statutes, extend to irregularities or defects in the estimate of cost and expenses, which the council may direct to be made, after a plan of sewerage for the corporation, or any part thereof, has been approved.''

I read from page 422, as to what constitutes local drainage:

''The question for determination under the statute is one of fact between the municipality and the owners of abutting property, viz: Whether certain lots or lands are so provided with proper local drainage, in the statutory sense, as to be exempt from the special assessment. The local drainage provided, which can be effective to exempt the property drained, must, of course, be of such character as to satisfy the statute. An ordinary surface drainage will not be sufficient. The dimensions, the mode of construction, the material used, the location, the outlet, the sanitary conditions, and other considerations should be such as would belong to a sewer or drain built substantially in conformity to the requirements of the statute.''

This is a case where a large sewer had been built in Cincinnati 40 years before the assessment for the sewer that was in question. It had been built by private parties at a very large expense, and it had been tapped by these parties who resisted the assessment. The court held in that case that they had ample local drainage, but that was a sewer leading to a proper outlet in the city; it was a large sewer. I don't remember the size of it, but it was immense and was built along Deer Creek, and they held that they were amply provided with local drainage. It was a large sewer and connections were made into a proper outlet; and the court held that they were not properly chargeable with the construction of another sewer; that they were not under obligation to connect with it.

In the 64th Ohio State, page 92:

"Where the lot of land is in need of local drainage, it is not exempt because it is entirely unimproved, and there is no immediate need for such drainage: Vacant lots and lands may, and usually do, receive a present special appreciable benefit from the construction of a sewer in proximity with and accessible by them for sewerage purposes, sufficient to sustain an assessment made on the basis of benefits."

In this case, the Supreme Court refer to to what is to be considered as proper local drainage:

"The question here, however, is somewhat different. It is whether present sufficient surface drainage constitutes local drainage within the purview of the statute; or must it be such as provides the land with adequate drainage for the necessary and usual purposes of sewerage. We think it must be of the latter character to work an exemption of the land from assessment. There is no direct finding that the lands of the plaintiffs in error were provided with drainage of that kind, nor that they did not need such drainage. Certain probative facts are found which tend to establish the ultimate fact, but in our opinion they fall short of that result."

The question is whether the drainage of sewage into a cesspool on that lot would be such local drainage as would exempt this property from liability for assessment for this sewer constructed on North Fourth street. From the holding of the Supreme Court, and the definition that they give of local drainage, the court thinks not. The court thinks that the city had a right

to build a sewer there that would provide this land with drainage off of the premises.

I am cited to the 4th Ohio Law Reporter, page 135, as sustaining the contention of the plaintiff. This is a recent case, decided June 2, 1906. The court says:

"We are of opinion that the premises described in the petitions herein have adequate drainage for the present without using the sewer which has been built in the street, and for which the city seeks to assess this property. The system of drainage now in use was built to the approval of the city authorities, and was the best that could be devised at the time it was built."

There they had a sewer which was built by the city authorities, and met with the approval of the city authorities.

Was the plaintiff entitled to any notice under the law as it existed at the time of the passage of this ordinance, declaring the necessity to improve and the assessing ordinance?

Section 2304 is the section of the statute which applied at that time:

"When it is deemed necessary by a city or village to make a public improvement, the council shall declare by resolution the necessity of such improvement, and shall give twenty days' written notice of its passage to the owners of the property abutting upon the improvement, or to the persons in whose names it may be assessed for taxation upon the tax duplicate, who may be residents of the county, which notice shall be served by a person designated by the council upon such person in the manner provided by law for the service of summons in a civil action, and publish the resolution not less than two or more than four consecutive weeks in some newspaper published and of general circulation in the corporation; provided, that in case of sewers, the twenty days' written notice to the owners of abutting property, or to the person in whose name the abutting property is assessed shall not be required."

The plaintiff was not entitled to any notice of the passage of the ordinance declaring the necessity to improve. And in the 9 C. C. Rep., 194, it is held that even though the statute has been amended, they would not be entitled to notice.

So the court enters a decree for the defendant.

By Judge Chas. H. Kibler: The court has not passed upon the matter of the action of the council in assessing on the whole 550 foot depth.

The Court: I think the testimony fails to show that the council assessed the 600 feet running along Charles street. The testimony, as I recollect it, shows that they made an estimate of the average depths of the lots. The agreement here shows that there is property south of this owned by Owens, and property still south of that owned by the Ball heirs which was in an out-lot at that time; but there is an agreement that the average depth of lots in that neighborhood, if it is the neighborhood, was 150 feet, and I do not think the council took into consideration any further assessment than on the average depth of those lots—150 feet; and if they did, it would come under the curative feature of the statute. I do not think these questions are jurisdictional to the council's action in the matter.

*Charles H. Kibler,* in person.

*Frank A. Bolton* and *Phil. B. Smythe,* for defendants.

---

## TRANSPORTATION OF DEAD ANIMALS THROUGH A MUNICIPALITY.